UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )   No. 24-cr-10051-JEK |
| | ) |
| CHRSTOPHER BRODEUR | ) |
| | ) |

**MOTION FOR IMMEDIATE TRANSPORT AND/OR MOTION TO DISMISS INDICTMENT**

This case highlights that the Attorney General and the Bureau of Prisons ("BOP") have a serious logistics problem on their hands—one that is depriving criminal defendants of their constitutional rights every day it remains unresolved.

*United States v. McCarthy*, No. 5:21-cr-61, 2023 WL 8291666 at *1 (M.D. Fla. Nov. 22, 2023) (dismissing indictment).

### INTRODUCTION

Christopher Brodeur suffers from Narcissistic Personality Disorder, Other Specified Personality Disorder with Antisocial Features, and Other Specified Bipolar and Related Disorder. He was found incompetent by state authorities in New Hampshire in 2018 and 2020. On May 23, 2024 this Court found him incompetent and committed him to the custody of the Attorney General for a determination of whether he could be restored to competency as mandated by 18 U.S.C. § 4241(d). (Dkt. 28).

18 U.S.C. § 4241(d) requires the Attorney General to make its initial restoration determination within four months. Instead, the Bureau of Prisons ("BOP") has projected that it will not even transfer Mr. Brodeur to an appropriate facility to begin the evaluation until December 2, 2024, more than *six* months after this Court's order. Assuming that Mr. Brodeur is transferred in December, an evaluation regarding competency restoration will likely not be completed until the beginning of April 2025**.** At that point Mr. Brodeur will have been in custody

for approximately ten months after this Court's order committing him to the custody of the Attorney General for "a reasonable period of time, not to exceed four months." § 4241(d).

Mr. Brodeur's continued detention violates both his rights under the Insanity Defense Reform Act ("IDRA") and his Fifth Amendment right to due process. Accordingly, this Court should dismiss the indictment and order Mr. Brodeur released. In the alternative, this Court should order the Attorney General to immediately transfer Mr. Brodeur to a suitable facility for competency restoration.

## FACTS

On December 14, 2023 Mr. Brodeur was arrested on a complaint charging two counts of mailing threatening communications in violation of 18 U.S.C. § 876(c). He was remanded to custody. (Dkt. 9). The government filed a motion for a competency evaluation, providing supporting exhibits which included prior state determinations of incompetency. (Dkt. 12). This Court ordered a competency evaluation on December 21, 2023. (Dkt. 15). Pursuant to that order, Mr. Brodeur was designated to the Metropolitan Correctional Center (MCC) Chicago, Illinois on January 9, 2024 and arrived there on January 19, 2024. (Dkt. 22).

MCC Chicago requested a 15-day extension so that the evaluation could be completed by March 4, 2024, with the report sent to the Court by March 25, 2024. (Dkt. 26).[1] The court allowed the extension. The evaluation was completed and Mr. Brodeur left MCC Chicago on March 5, 2024. He returned to the custody of the U.S. Marshal Service, District of Massachusetts by March 27, 2024. MCC Chicago requested and received several extensions to complete the written report. (Dkt. 26). It was produced on May 7, 2024 and transmitted to the

---

[1] The evaluation was to be completed within 30 days, with the possibility of a 15-day extension "upon a showing of good cause that the additional time is necessary to observe and evaluate the defendant." 18 U.S.C. § 4247(b).

court on May 10, 2024.

The Forensic Evaluation concluded that Mr. Brodeur suffers from a mental disease or defect that "impairs his ability to rationally understand the nature and consequences of the proceedings against him, and his ability to meaningfully assist in his own defense." (Dkt. 22 at 26). It did not give the Court any indication about whether the examiner believed Mr. Brodeur could be restored to competency, or under what circumstances.

On May 23, 2024 the Court found Mr. Brodeur to be incompetent. (Dkt. 27). As mandated by the Insanity Defense Reform Act ("IDRA"), 18 U.S.C. § 4241(d), the Court ordered Mr. Brodeur into the custody of the Attorney General:

(1)  for such a reasonable period of time, **not to exceed four months**, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward; and

(2)  for an additional reasonable period of time until –

  (a)  his mental condition is so improved that trial may proceed, if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward; or

  (b)  the pending charges against him are disposed of according to law; whichever is earlier.

18 U.S.C. § 4241(d) (emphasis added).

The court also ordered the Bureau of Prisons to provide a report within 60 days regarding "(1) whether a substantial probability exists that in the foreseeable future the defendant will attain the capacity to permit the proceedings to go forward, and (2) if so, an approximation of the anticipated period required to enable the defendant to attain the capacity to permit the proceedings to go forward." *Id*.

On June 6, 2024 the government provided the Declaration of Dia Boutwell, PhD., Chief of the Psychological Evaluation section at BOP. Dr. Boutwell stated that the BOP had

designated Mr. Brodeur to FMC Devens for his restoration period, but that he had been placed on the waitlist with an estimate admission date during the week of December 2, 2024. She stated that "the wait time to enter a medical center for a § 4241(d) evaluation and restoration treatment is approximately six to seven months depending on current demand with other swells and lulls within the pipeline." Exhibit A.

As explanation for this over six-month period of delay, Dr. Boutwell's declaration discussed the chronic and systemic backlog in the "pipeline" for BOP's pre-trial evaluations and commitments. These include, "the limited number of restoration sites, staffing levels, bed space, and the increased need for restoration over the years." Dr. Boutwell noted that there were currently four facilities that provided competency restoration treatment: FMC Butner, FMC Devens, USMCFP Springfield and MCC Chicago. Each has a limited capacity: FMC Devens, where Mr. Brodeur is designated, can only admit six new mental health study orders every month while FMC Butner can admit twelve and USMCFP Springfield can admit six. MCC Chicago has a "rated capacity of 42 beds," but can only admit patients who are Care Level II or below, require less intensive psychiatric services, and who do not have a history of disruptive or aggressive behavior. *Id*. Dr. Boutwell also noted that the Ninth Circuit's ruling in *United States v. Donnelly*, 41 F.4th 1102 (9th Cir. 2022), discussed below, had "severely impacted the BOP's ability to place individuals at the restoration site based on the date of the §4241(d) order" as "restoration beds must now be earmarked for individuals designated from the district courts within the Ninth Circuit." In addition "[a]n increasing number of Court orders…have resulted in individuals being 'bumped' for admission, further exhausting scant resources." *Id*.

On July 17, 2024 in response to the order for a report within sixty (60) days about the probability of Mr. Brodeur's potential restoration, the Government provided an updated letter

4

from Dr. Boutwell. It stated:

> As I discussed in my June 6, 2024 Declaration, there is a backlog of competency restoration placements, and Mr. Brodeur is currently slated to arrive at FMC Devens the week of December 2, 2024, to begin his competency restoration. As his restoration has not yet begun, we are unable to determine the likelihood of his attaining capacity to permit the proceedings to go forward, nor can we approximate how long it will take to restore capacity.

Exhibit B. The letter provided no details or updates about any additional measures that BOP had undertaken to address this backlog.

## LEGAL ARGUMENT

I. **The projected six-month delay in complying with the Court's § 4241(d) order violates 18 U.S.C. § 4241(d)(1) and Mr. Brodeur's due process rights under the Fifth Amendment.**

The Fifth Amendment of the United States Constitution declares that no person "shall be . . . deprived of life, liberty, or property without due process of law." U.S. Const. amend. V. In *Jackson v. Indiana*, 406 U.S. 715, 738 (1972), the Supreme Court held that the Due Process Clause prohibits holding a criminal defendant who is committed solely on account of his incapacity to proceed to trial for longer than "the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future." "At the least," the Court wrote, "due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *Jackson,* 406 U.S. at 738.[2] In response to the due process concerns identified in

---

[2] *Jackson* held that an Indiana statute authorizing indefinite commitment of a criminal defendant due to his lack of capacity to stand trial violated due process. In the course of its analysis it reviewed the federal statute governing competency restoration determinations, the predecessor of 18 U.S.C. § 424l (d), and explained that to withstand constitutional scrutiny, the statute, which contained no defined limits on how long a defendant could be held before determining whether competency could be restored, was governed by a "rule of reasonableness, under which a defendant could 'be held only for a 'reasonable period of time' necessary to determine whether there is a substantial chance of attaining the capacity to stand trial in the foreseeable future." *Jackson*, 406 U.S. at 733.

*Jackson*, Congress enacted 18 U.S.C. § 4241, part of the Insanity Defense Reform Act ("IDRA"), as "part of a broad overhaul of the provisions governing pretrial competency determinations." *United States v. Donnelly*, 41 F.4th 1102, 1105 (9th Cir. 2022); *see also United States v. Filippi*, 211 F.3d 649, 652 (1st Cir. 2000) (Section 4241 "is self-evidently built upon *Jackson*.").

### A. The projected six-month delay violates § 4241(d)(1)'s statutory deadline.

Section 4241(d)(1) specifies four months as the outside limit for the government to determine whether there is a substantial likelihood that a person's competency can be restored. There is a split amongst courts as to whether this four-month period includes time spent in pre-hospitalization confinement. The most coherent reading of §4241(d), in light of the statute's purpose to set strict limits on the length of time a defendant can be held for a restoration evaluation, is that the four-month period for an initial restoration evaluation begins when the Court commits a defendant to the custody of the Attorney General for that purpose. In *United States v. Carter*, the court observed that "the plain text of § 4241(d)(1) provides that the government 'shall hospitalize' an incompetent defendant as soon as the government obtains 'custody' over him … Accordingly, to the degree that § 4241(d)(1) allows the government to delay defendants' transportation, those delays must be a part of the 'reasonable period of time, not to exceed four months." *United States v. Carter*, 583 F. Supp. 3d 94, 100 (D.D.C. 2022) (rejecting the government's argument that IDRA's four-month period does not begin to run until the defendant is physically hospitalized for treatment at a suitable facility); *see also United States v. Sergio Emerson,* 22-cr- 96 -WCG, (E.D. Wis. Mar. 13, 2023) (ECF 18) ("By failing to place Emerson in a suitable facility within the four-month commitment period, the Attorney General has failed to comply with 18 U.S.C. § 4241(d)(1)"); *United States v. Donnelly,* 41 F.

6

4th 1102, 1108 (9th Cir. 2022) (Watford, J. concurring); As Judge Watford explained:

> Nothing in the text of § 4241(d) suggests that Congress envisioned the creation of two separate time periods, the first a period of prehospitalization subject to no statutory time constraints whatsoever, to be followed by a period of hospitalization subject to a strict four-month time constraint. The statute simply provides that upon finding the defendant not competent to stand trial, a district court 'shall commit' the defendant to the custody of the Attorney General. In the same breath, the statute states that the Attorney General 'shall hospitalize' the defendant for treatment and evaluation for a reasonable period of time not to exceed four months. The provision is most sensibly read as imposing an outside time limit on the entire period of commitment, from issuance of the court's commitment order to completion of the defendant's period of hospitalization.

*Donnelly*, 41 F. 4th at 1108 (Watford, J. concurring). *But see United States v. Berard*, 671 F.Supp.3d 107, 116 (D.N.H. 2023).[3]

### B. The projected six-month delay violates Mr. Brodeur's due process rights under the Fifth Amendment.

Even if this Court concludes that the four-month period in § 4241(d)(1) begins when a defendant is actually transferred to the BOP, and the government is not violating IDRA's *statutory* deadline, Congress's specification of four months as the outer limit for conducting the initial restoration evaluation is an important benchmark in determining the constitutionally permissible length of pre-hospitalization confinement.

In *Donnelly*, the Ninth Circuit held that Jackson's rule of reasonableness applies to the period of pre-hospitalization custody while the defendant is waiting for a bed at a competency restoration facility. 41 F.4th at 1106. There, the defendant waited eight months for a bed, and the Ninth Circuit found that span of time excessive and in violation of *Jackson*. In assessing whether the duration of pre-hospitalization confinement bore some reasonable relation to its purpose, the

---

[3] *Berard* is the only case within the First Circuit that has addressed these issues to date. However, at the time of the district court's decision the defendant had already been hospitalized. The court declined to dismiss, stating "neither this court nor Berard has been able to identify any case where a court has dismissed an indictment for lack of a timely transport <u>after</u> the government has admitted the defendant to a suitable facility." *Id*. at 117.

7

Court reasoned that the purpose of the pre-hospitalization period was "to allow the Attorney General time to identify a suitable facility and arrange for the defendant's transportation to that facility" and that period "must be limited to the time reasonably required to accomplish those tasks." *Id*. It then held that an eight-month pre-hospitalization confinement period did not bear a reasonable relation to this purpose, given that Congress had strictly limited the restoration period to four months:

> We do not think *Jackson's* 'reasonable relation' requirement permits a pre-hospitalization commitment period, whose purpose is simply to identify an appropriate treatment facility and arrange for the defendant's transportation to that facility, to last longer than the maximum time Congress permitted for the period of hospitalization itself. Thus, we have little difficulty concluding that whatever the outer limit of § 4241(d), the length of Donnelly's confinement exceeds it.

*Id*. at 1106. The Ninth Circuit declined to dismiss the case but remanded it to the district court to order the Attorney General to hospitalize the defendant in a suitable facility within seven days:

> Although Donnelly has not sought injunctive relief, the district court possesses supervisory authority to order the government to rectify violations of law with remedies shaped to redress the corresponding injury…Ultimately, both Donnelly's liberty interest and Congress's directive to restore incompetent defendants where possible will be best served by requiring the government to hospitalize Donnelly without further delay … Doing so will allow Donnelly to receive the treatment necessary to make a restoration determination—the critical step down the path toward either restoration and trial or dismissal of the indictment and initiation of civil commitment proceedings … We therefore vacate the district court's order and remand with instructions to order the Attorney General to hospitalize Donnelly in a suitable facility within seven days.

*Id*. at 1107 (internal citations omitted).

Many courts addressing the BOP's delays in providing competency restoration treatment have followed *Donnelly* and held that the pre-hospitalization custody period is subject to *Jackson's* reasonableness requirement. *See, e.g., United States v. Leusogi*, No. 2:21-CR-32, 2022 WL 16855426, at *2 (D. Utah Nov. 10, 2022) ("An unreasonable or unjustified period of

[pre-hospitalization] detention implicates the Defendant's due process rights and is therefore of constitutional dimensions."); *United States v. Wazny*, 2022 WL 17363048 at *5 (M.D. Pa. Dec. 1, 2022) ("§ 4241(d) must be construed to include a presumptive period after which detention becomes unreasonable, absent some sufficient justification by the Government."); *United States v. Lara*, 671 F.Supp.3d 1257, 1262 (D.N.M. Apr. 28, 2023) (holding that "the period of pre-hospitalization detention… must be reasonable and should not ordinarily extend beyond the maximum time Congress permitted for the period of hospitalization itself."); *United States v. Castrellon*, No. 22-cr-00112, 2023 WL 2330668 (D. Col. Mar. 1, 2023) (agreeing with *Donnelly* "that, generally, delays of four, six, or eight months in designating defendants to a medical facility strain the bounds of what can be deemed 'reasonable' periods of detention under *Jackson*."); *United States v. Raja*, 2023 WL 3497234 at *5 (S.D. Ind. May 17, 2023) (under *Jackson*, the amount of time a defendant is held after a commitment order must bear a reasonable relation to the purpose of the commitment); *United States v. Hayward*, No. 7:22-cr-00040 (W.D. Va. May 9, 2023) (ECF 48) ("The period a defendant endures awaiting the arrival at a facility to begin restoration treatment should generally not last longer than the statutory maximum period for the treatment. Such a delay bears no reasonable relation to the purpose for which the defendant is committed."); *United States v. Calderon-Chavez*, 688 F.Supp.3d 472, 479 (2023) (agreeing that *Jackson's* holding that the nature and duration of a defendant's confinement must bear some reasonable relation to the purpose for which the individual is committed applies equally to prehospitalization delays); *United States v. Reeves*, 690 F.Supp.3d 531, 535 (W.D.N.C. Sept. 5, 2023) ("*Jackson* teaches that the delay cannot be indefinite and must be rationally related to the purpose for which the individual is committed"); *United States v. McCarthy*, 2023 WL 8291666 at *3 (M.D. Fla. Nov. 22, 2023)

(observing that "a delay longer than the four-month hospitalization period itself is presumptively unconstitutional" citing *Donnelly*).

### C. The BOP's rationales for the delay do not excuse the violations.

The excuses provided by the Bureau of Prisons for the projected delay do not render that delay reasonable or constitutional. "The BOP's bureaucratic failure to allocate adequate resources to meet the demand for competency evaluations is not … a legitimate excuse for failing to comply with" 4241(d)(1). *Donnelly,* 41 F.4th at 1108-1109 (Watford, J. concurring). *See also Wazny*, 2022 WL 17363048 at *6 ("[T]he factors suggested by the Government that should be considered, to wit, the bureaucratic, staffing, and space issues within the BOP…[are] of only limited significance when balanced against the due process and statutory rights of a criminal defendant."); *Raja*, 2023 WL 3497234 at *5 (observing that the Court cannot excuse due process violations based on "constraints of available beds and personnel."). As one district court explained, "to find that logistical hurdles excuse a due process violation would render the Due Process Clause meaningless." *Mouton*, 2023 WL 3872206 at *2.

The BOP's protestations also ring hollow: It has known about this issue for *years*, and yet the pre-hospitalization periods endured by Mr. Brodeur and other profoundly ill individuals have not subsided. The Bureau of Prisons "has chosen to designate a small number of facilities as 'suitable facilities' and has failed to outfit them with the requisite staff, resources, and beds to handle the needs of those defendants requiring competency restoration. *Leusogi*, 2022 WL 16855426 at *3. *See also Lara*, 671 F.Supp.3d at ("the delay is attributable to the BOP's failure to maintain adequate facilities to keep up with the number of patients that require competency restoration."). The district court in *United States v. Mouton* documented a dramatic increase in wait times for competency restoration, from just over three months in May 2020 to just under

eleven months in May 2023. *Mouton*, 2023 WL 3872206 at *3-4. It observed that during the two-year period from May 2021 to May 2023, Dr. Boutwell submitted written declarations about these delays to federal courts on thirty-five occasions and testified about the delays seventeen times. *Id*. at *4. Writing in June 2023, the district court concluded that "BOP's efforts to reduce wait times have had little discernable effect on all but a very small subset of individuals:"

> BOP touts the opening of prison-based competency restoration programs at Chicago and Lexington. These programs have much shorter wait times than the other three programs housed at medical facilities (USMCFP Springfield, FMC Butner and FMC Devens)… But the vast majority – 75% – of individuals who need competency restoration services are not eligible for the Chicago or Lexington programs… And after these two programs opened, wait times for the medical facilities continued to increase. The Chicago program became fully operational in January 2023… and the 'small and, hopefully temporary restoration program' opened at Lexington in October 2022… But from December 2022 (just before the Chicago program opened) until now, the projected wait times have increased by 51 days, and since September 2022 (just before the Lexington program opened), projected wait times have increased by 85 days.

*Id*. at *4 (internal citations omitted).

Dr. Boutwell's declaration in this matter only discusses four competency restoration programs. It does not even list the Lexington program. Exhibit A. As *Mouton* observed, the program with the "rated capacity of 42 beds," MCC Chicago, is not open to the vast majority of individuals needing services. A comparison of the declaration filed in this case in June 2024 with one found on the public docket of another case filed in June 2023 shows that over the past year the government has not succeeded in substantially increasing the capacity of its competency restoration programs:

| JUNE 2023 | JUNE 2024 |
|---|---|
| Butner – 12 admits per month | *Same* |
| Devens – 3 admits per month | Devens – 6 admits per month |
| Springfield - 3 admits per month currently, but 6 admits per month typically. | Springfield – 6 admits per month |
| Chicago – rated capacity of 42 beds, limited to care level 2 for appropriate inmates | *Same* |
| Lexington – rated capacity of 12 beds, limited to care level 2 for appropriate inmates | *N/A* |

*See* Exhibit C (Declaration of Dia Boutwell filed in *United States v. Rendon-Romero*, No. 5:21-cr-00436-D (E.D.N.C. June 20, 2023) (ECF 52-1)). A supplemental declaration filed in *Mouton* indicates that in June 2023 FMC Devens had a wait list of eight months. *See* Exhibit D (Declaration of Dia Boutwell filed in *United States v. Mouton*, No. 20-cr-00501, (W.D. Tex. May 5, 2023) (ECF 89-1)). That wait time is not significantly different than the six to seven months the government is predicting here. The "widespread concern by courts about these prevalent delays has not resulted in any reduction in wait times." *Mouton*, 2023 WL 3872206 at *3. The BOP's rationales for violating Mr. Brodeur's statutory and constitutional rights do not excuse the violations.

> **D. The appropriate remedy for this violation is dismissal of the pending charge. In the alternative, the Court should order the government to transfer Mr. Brodeur to a suitable facility within 15 days.**

Section 4241(d) does not "expressly provide a remedy for violations arising from the failure to comply with the Act's various provisions. Nevertheless, decisional authority upholds the district court's power to fashion relief." *Lara*, 671 F.Supp.3d at 1264. Courts have routinely found that they have the authority to redress the statutory and constitutional violations at issue here. *See Donnelly*, 41 F.4th at 1107 ("the district court possesses supervisory authority to order the government to rectify violations of law with remedies shaped to redress the corresponding injury.").

Courts have identified two available remedies. First, most courts have given the government an opportunity to remediate the delay by promptly transferring defendants to a suitable facility. *Donnelly*, 41 F.4th at 1107 ("Ultimately, both Donnelly's liberty interest and Congress's directive to restore incompetent defendants where possible will be best served by requiring the government to hospitalize Donnelly without further delay."). This remedy does not erase the violation, but at least is aimed at mitigating the harm and is aligned with the statutory purpose of 4241(d): To minimize the length of time a defendant is evaluated for competency restoration so mentally ill incompetent defendants are not held indefinitely.

Courts have imposed various deadlines on the government to transfer a defendant to a suitable facility, in general between 7 and 45 days. *See Donnelly*, 41 F.4th at 1107 (seven days); *Lara*, 671 F.Supp.3d at 1264 (ordering government to transport defendant within seven days after an eight-month delay); *Leusogi*, No. 21-cr-32 (D. Utah) (ECF 93) (ordering government to transport defendant within seven days after a five-month delay); *United States v. Reeves*, 690 F.Supp.3d 531 (W.D.N.C. Sept. 5, 2023) (ordering government to transport defendant within two weeks after an eight-month delay or face dismissal); *Hayward*, No. 7:22-cr-00040 (W.D. Va. May 9, 2023) (ECF 48) (ordering government to transport defendant within 30 days after a five-month delay); *United States v. Calderon-Chavez*, 688 F.Supp.3d 472, 479 (2023) (ordering government to transport defendant within 21 days after a nine-month delay, and reserving ruling on motion to dismiss); *Wazny*, 2022 WL 17363048 at *6 (ordering government to transport defendant within 30 days after a sixth-month delay); *Raja,* 2023 WL 3497234 (ordering government to transport defendant within 30 days after an eight-month delay, and cautioning that dismissal is likely should the government fail to comply). In response to the BOP's argument that district court orders mandating the transport of certain defendants are

disruptive and counterproductive because they push some individuals to the front of the line and "create an absurd and unfair result," one district court noted this:

> [T]his absurd result is already taking place. While placement is typically first-come, first served, the Ninth Circuit's ruling in *Donnelly* has caused the Bureau of Prisons to earmark beds for the Ninth Circuit defendants at the expense of all the other defendants…Therefore it seems that the Ninth Circuit's stick is more effective than the carrot of admonishing yet deferential courts. So, the stick it must be.

*Reeves*, 690 F.Supp.3d at 537.

Where the Attorney General has not complied with such orders however, courts have found that the only other available and appropriate remedy is dismissal of the charges. For example, in *Leusogi*, the defendant filed a motion to dismiss after he had been in pre-hospitalization custody for four months. The court initially denied that motion and ordered the Attorney General to transport him to a suitable facility within seven days. The government failed to comply and supplied a declaration from Dr. Boutwell, stating that the defendant could be transported until his designated start date (eight months after the court's order 4241(d) order). The court dismissed the indictment, stating:

> The Court has ordered the Defendant transferred to a suitable facility twice now, both of which have been ignored by the Attorney General. While Dr. Boutwell asserts that the delay in transportation is the result of limited resources, her declaration identifies bureaucratic obstacles that also play a role. Further the BOP has chosen to designate a small number of facilities as "suitable facilities" and has failed to outfit them with the requisite staff, resources, and beds to handle the needs of those defendants requiring competency restoration… The only alternative the Court sees available to address the identified wrongs is to issue yet another order directing the Attorney General to transfer the Defendant to a suitable facility. However, Dr. Boutwell's declaration makes clear that the Attorney General has no ability or intention of complying with this Court's orders or the requirements of the IDRA.

*Leusogi*, 2022 WL 11154688 at *3.

Similarly, in *United States v. Hayward*, the district court initially committed the

defendant for competency restoration in December 2022. In May 2023 the court ordered the government to transport him within 30 days. In response, the government filed a supplemental declaration from Dr. Boutwell stating that BOP "unable to accommodate Hayward with a bed" and noting that 30 other defendants were ahead of him on the waitlist for FCI-Butner. *See* Order, at 4, *United States v. Hayward*, 22-cr-00040 (June 27, 2023) (ECF 57). The court dismissed the indictment, observing that "Dr. Boutwell has clearly indicated that the Attorney General does not plan to comply with my Order or have the resources to do so and will transport Hayward only after addressing the needs of the other defendants in front of him. Issuing another order will be a waste of judicial resources… the Attorney General and BOP have left me no choice but to find the drastic and severe remedy of dismissal of the indictment is appropriate…" *Id*. at 6-7. Other courts have ruled similarly. *See Lara*, 21-cr-01930 (D.N.M. May 5, 2023) (ECF 42) (dismissing indictment after eight-and-a-half month delay after BOP stated it could not accommodate court's earlier request to transfer inmate); *United States v. Castrellon*, No. 1:22-cr-00112-GPG (D. Col. May 12, 2023) (ECF 68) (dismissing indictment after nine-month delay where government failed to transfer defendant by the deadline set by the court). However, in at least one instance, where an elderly, ill defendant had been in custody for five months and the government had not provided any information about when he would be transported to being competency restoration treatment, the district court simply dismissed, stating "No further input from the government is required nor is any further delay tolerable." *United States v. McCarthy*, 2023 WL 8291666 at *2 (M.D. Fla. Nov. 22, 2023) (dismissing indictment after five-month delay).

      Dismissal is appropriate. *Donnelly* counsels that it is unreasonable for the pre-hospitalization commitment period to last longer than the maximum time Congress permitted for the period of hospitalization itself. In this case, the Court ordered Mr. Brodeur into the care of

the Attorney General on May 23, 2024 for a period not to exceed four months. The BOP informed the Court by letter that it would be unable to comply with that order and would be violating Mr. Brodeur's due process rights by delaying his transport to a suitable facility for approximately six months. The BOP reiterated this position in response to this Court's order for an update at the halfway point (60 days) of what should have been Mr. Brodeur's four-month restoration period. It seems clear that the BOP is either unable or unwilling to transport Mr. Brodeur within a constitutionally permissible length of time. This court should dismiss the indictment or, in the alternative, order the government to immediately transport Mr. Brodeur to a suitable facility in accordance with this Court's May 23, 2024 order.

## CONCLUSION

For the reasons stated above, this Court should dismiss the pending charge or, in the alternative, order the government to transport Mr. Brodeur to a suitable facility pursuant to the Court's May 23, 2024 order within fifteen (15) days of this order.

Respectfully submitted,

CHRISTOPHER BRODEUR,
By His Attorney,

*/s/ Oscar Cruz*
Oscar Cruz, BBO # 630813
FEDERAL PUBLIC DEFENDER OFFICE
51 Sleeper Street, 5th Floor
Boston, MA 02210
617-223-8061

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on July 24, 2024.

*/s/ Oscar Cruz*
Oscar Cruz