UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 1:24-cr-10051-JEK |
| CHRISTOPHER XAVIER BRODEUR, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION
FOR IMMEDIATE TRANSPORT OR TO DISMISS THE INDICTMENT**

**KOBICK, J.**

Defendant Christopher Brodeur has been charged with two counts of mailing threatening communications in violation of 18 U.S.C. § 876(c). On May 23, 2024, the Court found Brodeur incompetent to stand trial pursuant to 18 U.S.C. § 4241(d). He is currently in the custody of the Attorney General and awaiting transfer to a suitable facility to begin his competency restoration treatment in accordance with 18 U.S.C. § 4241(d)(1). Pending before the Court is Brodeur's motion for immediate transport to such a facility or to dismiss the indictment. He contends that the government's delay in hospitalizing him violates section 4241(d)(1) and his Fifth Amendment due process rights. The government responds that, in light of Brodeur's expected transfer to a treatment facility during the week of September 23, 2024—approximately four months after he was determined to be incompetent—Brodeur's pre-hospitalization commitment comports with the statute and the Constitution. Agreeing with the government's statutory construction and constitutional arguments, the Court will deny Brodeur's motion. If, however, Brodeur is not hospitalized by the week of September 23, 2024 to begin treatment, he may renew his motion and

1

the Court will again consider whether the delay in hospitalization amounts to a due process violation.

## BACKGROUND

On December 14, 2023, the government filed a criminal complaint charging Brodeur with two counts of mailing threatening communications to a judge in this Court in violation of 18 U.S.C. § 876(c). ECF 1. Brodeur was indicted on the same charges on February 22, 2024. ECF 18.

Shortly before Brodeur's December 21, 2023 detention hearing, the government moved for a competency evaluation pursuant to 18 U.S.C. §§ 4241(a)-(b) and 4247(b)-(c). ECF 12. After holding a hearing, the Court granted the motion, finding "reasonable cause to believe that [Brodeur] may presently be suffering from a mental disease or defect rendering him mentally incompetent." ECF 15, at 1 (citing 18 U.S.C. § 4241(a)). It accordingly ordered Brodeur committed to the custody of the Attorney General for placement in a suitable facility for a psychiatric or psychological evaluation. *Id.* at 1-2. Brodeur's evaluation was conducted at the Metropolitan Correction Center in Chicago, Illinois. ECF 26. He returned to Massachusetts in March 2024. ECF 28, at 2.

After receiving the forensic report produced following that evaluation, the Court held a competency hearing on May 23, 2024, in accordance with 18 U.S.C. §§ 4241(a), 4241(c), and 4247(d). ECF 27. The Court found by a preponderance of the evidence that Brodeur is "presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." ECF 28, at 3. In accordance with 18 U.S.C. § 4241(d), the Court committed Brodeur to the custody of the Attorney General to be hospitalized for treatment in a

suitable facility to determine if a substantial probability exists that he may be restored to competency in the foreseeable future. ECF 28, at 3-4.

In July 2024, Dr. Dia Boutwell, Chief of the Psychological Evaluations Section of the Bureau of Prisons, reported to the Court that because of "a backlog of competency restoration placements," Brodeur was "slated to arrive" at the facility identified for his treatment, FMC Devens, on "the week of December 2, 2024, to begin his competency restoration." ECF 30-2. Soon after, on July 24, Brodeur filed this motion seeking dismissal of the indictment or immediate transport to a suitable facility where he could begin his treatment for competency restoration. ECF 30. Before opposing the motion, the government represented that, as of July 30, Brodeur was "slated to arrive at FMC Devens the week of September 23, 2024" to begin treatment. ECF 31. The Court held a hearing on Brodeur's motion on September 12, 2024. ECF 39. Later that day, the government reported that Brodeur was second on the waitlist to be transferred to FMC Devens. ECF 36.

## DISCUSSION

Brodeur contends that his nearly four-month wait for placement in a suitable facility before he begins his competency restoration treatment violates 18 U.S.C. § 4241(d)(1) or, in the alternative, his Fifth Amendment due process rights. Congress enacted 18 U.S.C. § 4241 to "establis[h] the procedures for determining a criminal defendant's competence," *United States v. Reynolds*, 646 F.3d 63, 70 (1st Cir. 2011), and to "guar[d] against any infringement of [due process] constitutional protection" from "convicting a legally incompetent individual," *United States v. Malmstrom*, 967 F.3d 1, 4 (1st Cir. 2020). The statute provides, in pertinent part:

> If, after the [competency] hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in

3

> his defense, the court shall commit the defendant to the custody of the Attorney General. The Attorney General shall hospitalize the defendant for treatment in a suitable facility . . . for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward[.]

18 U.S.C. § 4241(d)(1).[1] In Brodeur's view, the statute authorizes the Attorney General to hold him in custody for no longer than four months, during which time the government must identify a suitable placement facility *and* provide treatment. Alternatively, Brodeur contends, his four-month pre-hospitalization period offends his due process rights.

### I.     **Brodeur's Pre-Hospitalization Custody Does Not Violate 18 U.S.C. § 4241(d)(1).**

Brodeur first argues that the government's delay in transferring him to a hospital for treatment will soon violate the four-month limitation set forth in section 4241(d)(1). In his view, the clock on that four-month period started to run on May 23, 2024, when the Court determined him to be presently incompetent and committed him to the Attorney General's custody. The government, in contrast, maintains that the four-month period in section 4241(d)(1) begins running upon a defendant's hospitalization, but not before the defendant has been hospitalized.[2]

The government's construction best aligns with the plain text of section 4241(d). The statute instructs that, following a finding of incompetency, "the court shall commit the defendant

---

[1] The statute also provides that this four-month period may be extended for "an additional reasonable period of time" until the defendant's mental condition is improved enough to permit the proceedings to move forward or the charges against him "are disposed of according to law." 18 U.S.C. § 4241(d)(2).

[2] The government also contends that Brodeur's motion is "premature and not ripe" because "the four-month period . . . has not even begun." ECF 34, at 6. The Court disagrees. Brodeur's motion asks the Court to determine whether that four-month period applies to his commitment, as Brodeur argues, or only to hospitalization, as the government maintains. Brodeur's motion is not, therefore, premature under his interpretation of the statute. And Brodeur alternatively advances a due process challenge to the length of his pre-hospitalization commitment that is distinct from this statutory argument. His challenge to the length of his pre-hospitalization commitment is both timely and ripe.

to the custody of the Attorney General." 18 U.S.C. § 4241(d)(1). In the next sentence, it instructs the Attorney General to "hospitalize the defendant for treatment in a suitable facility . . . for such a reasonable period of time, not to exceed four months." *Id.* Congress thus limited the defendant's hospitalization to a "reasonable period of time," and it further specified that this reasonable period of time must not "exceed four months." *Id.* Under the statute's plain text, the four-month limitation applies to the period of hospitalization, not to the period of time before hospitalization, when the Attorney General is charged with identifying a suitable facility for the defendant's treatment. Indeed, the sentence that addresses a defendant's commitment to the custody of the Attorney General, which precedes the sentence about hospitalization, sets no timeframe at all.

Section 4241(d)(1) implicitly recognizes that hospitalization typically cannot take place immediately upon a finding of incompetency, because before hospitalization can occur, the Attorney General must identify a "suitable facility" for treatment. A "suitable facility" is defined as "a facility that is suitable to provide care or treatment given the nature of the offense and the characteristics of the defendant." 18 U.S.C. § 4247(a)(2). The statute thus charges the Attorney General or his designee with performing an individualized assessment of the defendant to determine which treatment facility is appropriate to the defendant's needs. Construing the statute to set a four-month cap on the pre-hospitalization assessment period and the hospitalization period together would hinder the Attorney General's ability to select a facility suitable for treatment and could impair the defendant's ability to receive treatment that may restore him to competency. *See United States v. Alhindi*, 97 F.4th 814, 826 (11th Cir. 2024) (section 4241(d)(1) "implicitly recognizes that hospitalization cannot occur instantaneously" with commitment because "the Attorney General must find a 'suitable facility' in which to hospitalize the defendant"); *United*

5

*States v. Quintero*, 995 F.3d 1044, 1051, 1054 (9th Cir. 2021) (recognizing the discretion afforded the Attorney General in section 4241(d) to select the suitable facility for treatment).

Several Courts of Appeals have likewise concluded that the four-month period in section 4241(d)(1) applies only to the defendant's hospitalization, not his pre-hospitalization commitment. *See Alhindi*, 97 F.4th at 824 ("[T]he four-month limitation applies to the period of hospitalization."); *United States v. Donnelly*, 41 F.4th 1102, 1105 (9th Cir. 2022) (per curiam) ("[T]he text of the statute makes clear that the four-month time limit applies only to the period of hospitalization, and thus begins to run when the defendant has been hospitalized."); *United States v. Magassouba*, 544 F.3d 387, 408 (2d Cir. 2008) ("[W]e construe § 4241(d)(1) to impose a four-month limit only on the Attorney General's authority to hold an incompetent defendant in custodial hospitalization for the purpose of determining the probability of his regaining competency."); *see also United States v. Curbow*, 16 F.4th 92, 122 (4th Cir. 2021) (Traxler, J., concurring) ("The time periods of § 4241(d)(1) and (d)(2) simply establish the maximum periods of *hospitalized evaluation and treatment* authorized for determining a defendant's competence to stand trial, not the maximum period that the defendant may be held in the custody of the Attorney General." (emphasis in original)). While the First Circuit has not squarely addressed the question, it has, when summarizing section 4241(d), distinguished commitment from hospitalization and suggested that the four-month period applies to hospitalization only. *See United States v. Mahoney*, 717 F.3d 257, 264 (1st Cir. 2013) ("The defendant will always spend an initial period (up to four months) hospitalized to determine [whether there exists a] 'substantial probability' of attaining capacity in the foreseeable future." (citing 18 U.S.C. § 4241(d)(1))); *United States v. Filippi*, 211 F.3d 649, 650 (1st Cir. 2000) ("[W]here the district court finds a defendant incompetent to stand trial by reason of mental disease or defect, the court 'shall' commit the defendant to the custody of the

Attorney General, who is required to hospitalize the defendant for treatment and 'for such a reasonable period of time, not to exceed four months.'" (quoting 18 U.S.C. § 4241(d))).

Since section 4241(d)(1)'s four-month period limits the length of hospitalization, and Brodeur has not yet been hospitalized, the government has not violated the statute by holding him in custody for approximately four months—that is, from May 23, 2024 to the week of September 23, 2024, at which time he will be transferred to FMC Devens for treatment.

II.     **Brodeur's Pre-Hospitalization Detention Does Not at This Point in Time Violate Due Process.**

Brodeur alternatively argues that, even if there has been no statutory violation, the government's delay in hospitalizing him violates his Fifth Amendment due process rights. To remedy this alleged violation, Brodeur initially sought dismissal of the indictment or an order from the Court to transfer him to a suitable facility within fifteen days of the Court's decision. ECF 30, at 16. But during the parties' briefing of the motion, Brodeur's projected arrival at FMC Devens moved from the week of December 2, 2024 to the week of September 23, 2024. Accordingly, at the September 12 hearing, Brodeur clarified that he now seeks an order requiring his transfer to FMC Devens no later than September 23, 2024. The government responded that transferring Brodeur to FMC Devens no later than sometime during the week of September 23, 2024 does not amount to a violation of his due process rights.

In *Jackson v. Indiana*, the Supreme Court held that "indefinite commitment of a criminal defendant solely on account of his incompetency to stand trial does not square with the . . . guarantee of due process." 406 U.S. 715, 731 (1972). Because "civil commitment for any purpose constitutes a significant deprivation of liberty," *Addington v. Texas*, 441 U.S. 418, 425 (1979), "due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed," *Jackson*, 406 U.S. at 738. While "Congress did

not provide a specific time limit for a pre-hospitalization commitment period," the Constitution—consistent with *Jackson*—"does not permit any portion of a defendant's commitment under 18 U.S.C. § 4241(d) to last indefinitely." *Donnelly*, 41 F.4th at 1106.

The question for the Court, then, is whether Brodeur's pre-hospitalization commitment "bear[s] some reasonable relation to the purpose for which [he] is committed." *Jackson*, 406 U.S. at 738; *see Donnelly*, 41 F.4th at 1106 ("*Jackson* requires the duration of any such commitment to 'bear some reasonable relation' to its purpose."). Brodeur is, at present, committed so that the government can identify a suitable facility for his treatment, secure a bed in that facility, and arrange for transportation to that facility. *See Donnelly*, 41 F.4th at 1106 (the purpose of pre-hospitalization commitment is "to identify an appropriate treatment facility and arrange for the defendant's transportation to that facility"). The length of Brodeur's initial projected pre-hospitalization commitment—that is, more than six months between the finding of incompetency and his arrival at FMC Devens—may indeed have been so detached from these purposes as to give rise to a constitutional violation. But under the present circumstances of this case, Brodeur's pre-hospitalization commitment of four months, or four months and a few days, does not offend due process. The government has represented to the Court that Brodeur will be transferred to FMC Devens no later than the week of September 23, 2024, and that he is presently second in line for a bed there. While the government's evidence regarding the significant backlog in beds at treatment facilities cannot always excuse delays in hospitalization under section 4241(d), the backlog in this case has not amounted to a delay of more than approximately four months. *See id.* (regarding a pre-hospitalization commitment of four months as the outer bound of reasonableness). In each of the cases Brodeur cites that have found a constitutional violation, the period of pre-hospitalization commitment was longer than Brodeur's commitment. *See United States v. Leusogi*, No. 21-cr-32-

8

TS, 2022 WL 16855426, at *3-4 (D. Utah Nov. 10, 2022) (8 months); *United States v. Wazny*, No. 21-cr-247-RDM, 2022 WL 17363048, at *5-7 (M.D. Pa. Dec. 1, 2022) (8-9 months); *United States v. Lara*, 671 F. Supp. 3d 1257, 1262 (D.N.M. 2023) (over 8 months); *United States v. Castrellon*, No. 22-cr-112-CMA-GPG, 2023 WL 2330688, at *4 (D. Colo. Mar. 1, 2023), *report and recommendation adopted in part*, No. 22-cr-00112-GPG, 2023 WL 9957097 (D. Colo. May 12, 2023) (8 months); *United States v. Raja*, No. 21-cr-368-TWP-MG-2, 2023 WL 3497234, at *5 (S.D. Ind. May 17, 2023) (nearly 9 months); ECF 48, at 4-6, *United States v. Hayward*, No. 22-cr-40-RSB (W.D. Va. May 9, 2023) (over 8 months); *United States v. Calderon-Chavez*, 688 F. Supp. 3d 472, 479 (W.D. Tex. 2023) (9 months); *United States v. Reeves*, 690 F. Supp. 3d 531, 537 (W.D.N.C. 2023) (9 months); *United States v. McCarthy*, 703 F. Supp. 3d 1377, 1378, 1381 (M.D. Fla. 2023) (5 months where defendant was 90 years old and terminally ill).

The Court concludes, therefore, that the length of Brodeur's pre-hospitalization commitment bears a reasonable relationship to the purpose of that commitment. If Brodeur is not transferred to FMC Devens during or before the week of September 23, 2024, however, he may renew his motion and the Court will consider, on an expedited basis, whether the delay warrants dismissal of the indictment or an order for immediate transport to a suitable facility for treatment.

### CONCLUSION AND ORDER

For the foregoing reasons, Brodeur's motion for immediate transport or to dismiss the indictment, ECF 30, is DENIED.

SO ORDERED.

Dated: September 19, 2024

/s/ Julia E. Kobick
JULIA E. KOBICK
UNITED STATES DISTRICT JUDGE